No. 20-1124

In the

# United States Court of Appeals

# for the Seventh Circuit

---

UNITED STATES OF AMERICA,
                    Plaintiff-Appellee,

v.

JEFFREY ESPOSITO,
                    Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
No. 1:18-cr-00109-JMS-MJD — Hon. Jane Magnus-Stinson, *Chief Judge*.

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

JOHN E. CHILDRESS
Acting United States Attorney

Kelsey L. Massa
Assistant United States Attorney

United States Attorney's Office
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333

# TABLE OF CONTENTS

**Page No**.

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUE ........................................................ 2

STATEMENT OF THE CASE ........................................................ 3

SUMMARY OF THE ARGUMENT.. .............................................. 12

ARGUMENT ............................................................................. 13

I.     The District Court Did Not Err, Plainly or Otherwise…...................... 13

    A.     Plain Error Review Applies............................................................13

    B.     The Sentencing Court Properly Structured Esposito's Sentence Pursuant to § 5G1.2(d)...........................................…………..14

        1.     Esposito's Grouping Argument Is Off the Mark................14

        2.     The District Court's Method for Implementing a "Total Punishment" Was Reasonable, and Esposito's Claimed Procedural Error Is No Reason for Remand...................... 18

        3.     The Precedents Esposito Cites Do Not Alter the Analysis ...............................................................21

    C.     Esposito's Below-Guidelines Sentence, and The Court's Procedures for Choosing It, Did Not Affect His Substantial Rights or Otherwise Amount to Plain Error……..........................27

CONCLUSION............................................................................ 31

# TABLE OF AUTHORITIES

**Cases**                                                        **Page No**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)......................................21, 22, 27

*Dean v. United States,* 137 S.Ct. 1170 (2017) .....................................24, 25, 26

*Greenlaw v. United States*, 554 U.S. 237 (2008) .......................................24, 25

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) ..............................14

*Rosales-Mireles v. United States*, 138 S.Ct. 1897 (2018) ...............................13

*United States v. Abebe*, 651 F.3d 653 (7th Cir. 2011) ....................................28

*United States v. Babcock*, 924 F.3d 1180 (11th Cir. 2019) ............................15

*United States v. Bour*, 804 F.3d 880 (7th Cir. 2015).....................................27

*United States v. Cook*, 850 F.3d 328 (7th Cir. 2017)......................................13

*United States v. De la Torre*, 327 F.3d 605 (7th Cir. 2003) ...............21, 22, 23

*United States v. Dominguez Benitez,* 542 U.S. 74 (2004) ...............................14

*United States v. Dumes,* 313 F.3d 372 (7th Cir. 2002)....................................16

*United States v. Griffith*, 85 F.3d 284 (7th Cir. 1996) ...............................23, 24

*United States v. Hill*, 30 F. App'x 602 (7th Cir. 2002) ...................................27

*United States v. Lewis*, 842 F.3d 467 (7th Cir. 2016) .....................................13

*United States v. Metzger*, 411 F. App'x 1 (7th Cir. 2010)...............................16

*United States v. Newsom*, 402 F.3d 780 (7th Cir. 2005) .................................15

*United States v. Noel,* 581 F.3d 490 (7th Circ. 2009)......................................16

*United States v. Olano*, 507 U.S. 725 (1993) .................................................. 14, 27

*United States v. Ousley*, 698 F.3d 972 (7th Cir. 2012) .................................... 13

*United States v. Pennington*, 667 F.3d 953 (7th Cir. 2012) ............................ 28

*United States v. Schock*, 862 F.3d 563 (6th Cir. 2017) ................................... 15

*United States v. Stewart*, 902 F.3d 664 (7th Cir. 2018) .................................. 13

*United States v. Thompson*, 523 F. 3d 806 (7th Cir. 2008)............................. 16

*United States v. Veysey*, 334 F.3d 600 (7th Cir. 2003) ................................... 16

## Statutes

18 U.S.C. § 924(c) .......................................................................................... 25

18 U.S.C. § 2251(a) ........................................................................................... 8

18 U.S.C. § 2251(e) ......................................................................................... 17

18 U.S.C. § 2252(b) ......................................................................................... 17

18 U.S.C. § 3553(a) ...................................................................................passim

## Rules

Federal Rule of Criminal Procedure 52(b)....................................................... 13

## Other Authority

U.S.S.G. § 1B1.2(d) ........................................................................................... 2

U.S.S.G. § 2G2.1............................................................................................ 15, 20

U.S.S.G. § 3D1.2......................................................................................... 15, 18, 20

U.S.S.G. § 3D1.2(d) ......................................................................................... 15

U.S.S.G. § 3D1.3 ................................................................................. 23

U.S.S.G. § 5G1.2 ........................................................................... 19, 20

U.S.S.G. § 5G1.2(d) ............................................................. 2, 15, 16, 19

# JURISDICTIONAL STATEMENT

The Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUE

1.  Whether the district court's reasonable application of U.S.S.G. §§ 1B1.2(d) and 5G1.2(d), was plain error worthy of remand, where the resulting sentence was hundreds of years below the applicable guidelines range and reflected a reasoned application of the 18 U.S.C. § 3553(a) factors.

## STATEMENT OF THE CASE

This direct appeal follows Jeffrey Esposito's guilty plea and sentencing.[1]

### *A Broader Child Exploitation Investigation Uncovers Esposito's Shocking Crimes*

In 2017, law enforcement identified multiple members of an anonymous online forum who were actively engaged in producing and posting child sex abuse material. (PSR ¶ 14).  In January of 2018, during a review of one the electronic devices of "M.M.," one forum member, Digital Investigative Analysts from the Department of Justice's Child Exploitation and Obscenity Section's High Technology Investigative Unit recovered a portion of a private chat between M.M., and another user, "Blinking Ping-San." (*Id.* ¶ 15).

M.M. and Blinking Ping-San were discussing production and distribution of child pornography.  (*Id.*)  But they were doing more than just chatting: Blinking Ping-San sent M.M. a private message containing a video. (*Id.*)  The video depicted Jeffrey Esposito engaging in anal sex with a minor (later identified as Minor Victim 1). (*Id.*)

As it turned out, "Blinking Ping-San" was Jeffrey Esposito.  Esposito initially used a false name for Minor Victim 1 in the chats, but eventually

---

[1] [1]Throughout this brief, the government will make the following references: (S. = Sentencing Transcript); (PSR = Presentence Investigation Report); (A. Br. = Appellant's Brief).

revealed Minor Victim 1's true first name and shared that he had known Minor Victim 1 since the child was 5 months old.  (*Id.* ¶ 16.)

Minor Victim 1 is Esposito's adopted son.  (*Id.*)  Esposito's abuse of Minor Victim 1 began when the child was approximately 7 years old and continued for nearly ten years, until Esposito's arrest in this case in 2018. (*Id.* ¶¶ 6-8).

M.M. and Esposito continued to exchange videos they had made of themselves abusing their victims.  They would send each other requests for videos showing specific sexual acts, and there were several instances where M.M. and Esposito requested videos that depicted the victims being tortured and expressing pain.  (*Id.* ¶¶17, 19).

For example, in one exchange M.M. referenced a video Esposito had sent M.M. that showed Esposito strangling Minor Victim 1.  (*Id.* ¶ 19).  M.M. asked if Esposito had a longer video, and Esposito responded "no I will get u a better one."  (*Id.*)  At another point, Esposito discussed multiple videos he received from M.M. that showed M.M. using duct tape on M.M.'s victim, and Esposito asked for more videos like those. (*Id.*)

In another exchange, Esposito told M.M. that he has "a vid of [Minor Victim 1] a little younger getting pissed on.  And some fuck vids. I will look for th tied fuck vids if I have them [sic]." (*Id.* ¶ 17.) M.M. responded, "Interesting :P May I ask for the piss vid and a anal vid? I will find another

anal vid for you when we both get on next time :).” (*Id.*)  Esposito said, “deal.”
(*Id.*)

Esposito often complained to M.M. that his wife would interfere with
Esposito's access to his victim, including saying that his wife “cock blocked”
him.  (*Id.* ¶ 21).  In addition to his own victim, Esposito expressed sexual
interest in M.M.'s victim, who was 8 years old, as well as in a young boy who
lived in Esposito's apartment building. (*Id.* ¶ 22).

### Esposito's Arrest Interviews Reveal the Greater Depths of His Abuse of Minor Victim 1

On March 13, 2018, law enforcement executed search warrants at
Esposito's apartment in Indiana and at his home in Ohio, where the victim
lived.  (*Id.* ¶ 23.)  Esposito was present at his Indiana apartment at the time
the warrant was executed and agreed to speak with investigators.  (*Id.*)

Esposito told the investigators that he viewed child pornography every
day and had been viewing child pornography for many years.  (*Id.* ¶ 24.)  He
stated he became sexually aroused and would masturbate when he viewed
child pornography, and that he obtained child pornography from trading with
other pedophiles online.  (*Id.*)  Esposito said he was sexually attracted to
children between the ages of 10-15 years old, but that he had child sex abuse
material depicting as young as 3 years old.  (*Id.*)  He stated that he was not a
predator because he loved and cared about children.  (*Id.*)  He also stated that

he believed children as young as 8 years old could consent to sexual relationships with adults.  (*Id.*)

Esposito stated that he had been abusing his adopted son since the child was approximately 10 years old.  (*Id.* ¶ 25.)  The victim recalls the abuse starting when he was approximately 7 years old, and chat logs between Esposito and M.M. also indicate the abuse started when the victim was 7 or 8.  (*Id.*)

Esposito admitted to engaging in sex acts with the victim both at their family home in Ohio and at Esposito's apartment in Indiana, where he would travel for work.  (*Id.*)  He would have both anal and oral sex with the victim.  (*Id.*)  He also urinated on the victim, including urinating in the victim's mouth, choked the victim until the victim cried, whipped the victim, bound the victim's hands and feet, blindfolded the victim, and penetrated the victim with objects.  (*Id.*)  He used a collar on the victim that he had purchased at a pet store.  (*Id.*)  Esposito would take photographs and video recordings of much of this sexual activity.  (*Id.*)  Esposito told investigators that he had only made one bondage video of his victim, but evidence recovered from Esposito's electronic devices refutes this assertion. (*Id.*)

Esposito stated that he explained the sex acts to his victim by telling him it was what people who loved each other did.  (*Id.* ¶ 26.)  Esposito also told the victim that the recordings of the abuse would not be shared with

anyone. (*Id.* ¶ 27.) In reality, Esposito shared the videos and pictures of the abuse online with other pedophiles. (*Id.* ¶ 25.)

The victim was also interviewed after Esposito's arrest. (*Id.* ¶ 27.) The victim, who was 16 years old by that time, stated that the abuse began when he was 7 or 8 years old and had stopped in the last year or two. (*Id.*) Esposito had told the victim that, because the abuse was stopping, that the victim would have to find another child for Esposito. (*Id.*) The victim stated that the victim knew Esposito had filmed the abuse, but that Esposito had promised that the films were just for Esposito and no one else. (*Id.*)

The victim recalled multiple instances of sexual penetration, forced oral sex, and physical abuse including strangulation and holding the victim's wrists so the victim couldn't move. (*Id.*¶¶ 27-28.) The victim stated that the abuse would occur in Indiana, in his parents' bedroom in Ohio when his mom was out doing errands, in hotels, and sometimes in the car coming home from wrestling practice. (*Id.* ¶ 28.) The victim also described "Boys Weekends" where Esposito and the victim would be together alone for an entire weekend. (*Id.* ¶ 29.) Esposito would allow the victim to do something that the victim wanted to do, but they would then do "dad stuff," meaning the sexual abuse. (*Id.*)

Esposito would tell the victim during the various sex acts to "be a man and do it" and that if the victim told anyone about the abuse that Esposito

could get in trouble or go to jail for a long time. (*Id.* ¶ 28.) Esposito also made the victim communicate with other pedophiles and their victims online and showed the victim child pornography. (*Id.* ¶ 29.) Esposito asked the victim to abuse other children. (*Id.*) The victim told the interviewers "thank God" that Esposito never actually made the victim do it. (*Id.*)

Investigators seized multiple electronic devices from Esposito and recovered approximately two terabytes of child pornography. (*Id.* ¶ 30.) This included hundreds of thousands of images and videos of child pornography depicting children as young as 3 years old. (*Id.*) Forensic examination revealed that Esposito used an anonymous network called Tor, which allows users to visit regular websites anonymously without revealing their IP addresses and to access so-called "hidden services." (*Id.* ¶ 35.) Esposito had several bookmarks to such hidden services of that were known Tor child pornography pages. (*Id.*) Esposito had also used the Zoom videoconference application to chat with other individuals engaging in the sexual exploitation of children. (*Id.* ¶ 36.)

### *Charges, Plea, and Sentencing*

The day after his arrest, Esposito was charged by criminal complaint with 20 counts of sexual exploitation of a child, in violation of Title 18 U.S.C. § 2251(a). (*Id.* ¶ 2.) The following month, a federal Grand Jury returned a 21-count indictment against Esposito, alleging that he sexually exploited a

8

child and attempted to sexually exploit a child on twenty separate occasions between December 2008 and March of 2018.  (*Id.* ¶ 3.)  Count 21 alleged that Esposito was in possession of child pornography on or about March 13, 2018. (*Id.*)

A year later, Esposito petitioned to plead guilty. (*Id.* ¶ 4.)  He entered a formal plea of guilty to all 21 charges at a change of plea hearing on June 4, 2019. (*Id.* ¶ 5.)  The pre-sentence investigation report calculated Esposito's guideline sentence to be 620 years—the maximum sentence on each count, run consecutively.  (*Id.* ¶ 266).

At sentencing, the court stated that "[t]o use the word 'torture' in this case to describe some of the conduct is not an overstatement. It is not hyperbole or [sic] the horror of what happened." (S. 42).  After hearing arguments from counsel comparing Esposito's case to that of other child exploitation defendants, the court explained,

> I am not looking at any other case. I am looking at a father doing this to his son. So whatever differences there are, I can think of nothing more horrible, no greater betrayal, no greater abuse, no greater psychological and physical damage that an individual can cause to his own child[.]

(*Id.*)

The court referenced the victim's impact statement, which the government had read into the record, and noted that the victim's own words "establish how he felt, the worthlessness, the suicidal thoughts."  (*Id.* 43).  The court

acknowledged that Esposito was accepting responsibility by pleading guilty. (*Id.*)  However, the court went on to say that, though that did "count for something," there was a "mountain of evidence" in the case, and so Esposito was not truly sparing his victim the trauma of testifying.  (*Id.* 45.)

Esposito "dehumanized" and "objectified" his adopted son in such horrific ways that the court refused to take the chance that Esposito would ever be around children again.  (*Id.* 46.)  In imposing sentence, the judge stated she was

> guided by the guidelines in the sense of those that have more
> serious guideline ranges, I have imposed more serious sentences.
> So while it is, perhaps, a more complicated sentence than it needs
> to be, to me, it is meaningful because of the nature and
> circumstances of the acts that are depicted in the various counts
> for which the guideline range was significant.

(*Id.* 47.)

The court then imposed the maximum sentence of 30 years on Count I, which involved Minor Victim 1 being whipped.  (*Id.*)  On each of Counts II – XII, the court imposed a sentence of 20 years, "not to in any way minimize the conduct in those cases, but it is not as egregious as Count I."  (*Id.*)  For Counts XIII-XV, the court imposed the maximum sentence of 30 years on each count. (*Id.*) On Count XVI, the court imposed a sentence of 20 years. (*Id.* 48.)  On Count XVII, the Court imposed the maximum sentence of 30 years. (*Id.*)  On Counts XVIII and XIX, the court imposed a sentence of 20 years on

10

each. (*Id.*) On Count XX, the court imposed the statutory maximum of 30 years. (*Id.*) On Count XXI, the court imposed the statutory maximum on that count of 20 years. (*Id.*)

The judge then explained that she was imposing consecutive sentences on counts I, XIII, XIV, XV, XVIII, XX and XXI for a total of 200 years. (*Id.*) The sentences on the remaining counts would run concurrently. (*Id.*)

The court clarified the sentence multiple times. (*Id.* 51-52, 55-56.) Defense counsel requested the court to address how such a severe sentence would serve the purpose of deterrence for the more serious offender. (*Id.* 52). The court obliged:

> the horrific nature of the crimes [Esposito] committed can't be erased by the fact he has a short life to live. So I recognize that it may – I'm not sure how a 200-year sentence wouldn't deter other people, but it may deter them pleading guilty if they want to take a shot at a lesser sentence." (*Id.*)

The court then asked if either party had anything further. Defense counsel answered, "no further comment or questions or request for further explanation." (*Id.* 57).

Judgment and this timely appeal followed.

## SUMMARY OF THE ARGUMENT

Esposito raised no objection to the district court's procedures or his guideline range of 620 years.  And he does not argue that the below-guidelines sentence he received is substantively unreasonable.

Esposito instead contends that the sentencing court erred when it announced the need for (and its intention to impose) a life sentence, then detailed the sentences on each charge individually, count by count, and finally reached a life-equivalent total of 200 years imprisonment.  His argument that the decision violated the spirit of the grouping rules and a purportedly mandatory two-step sentencing procedure fails.

The district court properly structured Esposito's life sentence by running certain counts consecutive and others concurrent to achieve a total punishment of 200 years in prison.  His reliance on the grouping rules is misplaced, given the crimes at issue.  And the procedural error he believes occurred relies on a misunderstanding of the record and a burdensome view of what the Guidelines require a district judge to do.

In all events, the court sufficiently explained the sentence and properly tied the decision to the § 3553(a) factors.  There was no error here.  Certainly, nothing the court did affected his substantial rights or called into question the integrity of the judiciary.  This Court should affirm.

# ARGUMENT

## I. The District Court Did Not Err, Plainly or Otherwise

### A. Plain Error Review Applies

Typically, this Court reviews a district court's application of the guidelines *de novo*. *United States v. Cook*, 850 F.3d 328, 331 (7th Cir. 2017) (citing *United States v. Lewis*, 842 F.3d 467, 476 (7th Cir. 2016)).

But that standard applies only if the issue is preserved. "To preserve an issue for appellate review, a party must make a timely and specific objection, in order that he or she might alert the court and the opposing party as to the specific grounds for the objection." *United States v. Ousley*, 698 F.3d 972, 975 (7th Cir. 2012); *see also United States v. Stewart*, 902 F.3d 664, 672–74 (7th Cir. 2018). Esposito raised no objection at sentencing to the way the court pronounced or structured his sentence, even when given an opportunity to do so. (S. 57). He is therefore not entitled to *de novo* review.

Because sentencing can involve complex calculations, district courts will occasionally make mistakes, and those mistakes may indeed go unnoticed by both the government and defense counsel. *Rosales-Mireles v. United States*, 138 S.Ct. 1897 (2018). The law therefore allows defendants recourse under Federal Rule of Criminal Procedure 52(b), which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the [district] court's attention."

13

Plain error review has three prongs. "First, there must be an error that has not been intentionally relinquished or abandoned.  Second, the error must be plain—that is to say, clear or obvious.  Third, the error must have affected the defendant's substantial rights." *Molina–Martinez v. United States,* 136 S.Ct. 1338, 1343 (2016) (citations omitted).  To satisfy this third condition, the defendant ordinarily must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Id.* (quoting *United States v. Dominguez Benitez,* 542 U.S. 74, 76, 82 (2004)).

Even if all three plain-error prongs are satisfied, the analysis is not yet complete.  This Court has the discretion to correct the error "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993).

## B.     The Sentencing Court Properly Structured Esposito's Sentence Pursuant to § 5G1.2(d)

### 1.     Esposito's Grouping Argument Is Off the Mark

Esposito's challenge on appeal relies first on a recitation of the philosophy underlying the Sentencing Guidelines' grouping provisions.  (A. Br. 10-12.)  He says that the applicable guidelines are designed to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." (*Id*. 11, quoting U.S.S.G. Introductory Commentary).

14

Esposito is right that, where there are multiple counts of conviction, courts typically use the grouping provisions of Chapter 3 of the Guidelines to group the various counts and determine the offense level that applies to the group. U.S.S.G. § 3D1.2.  But, as a criticism of the decision below, Esposito's assertions are not particularly relevant.

That is, first, because offenses involving the sexual exploitation of children are "specifically excluded" from the grouping rules.  *United States v. Newsom*, 402 F.3d 780, 784 (7th Cir. 2005) (discussing U.S.S.G. § 3D1.2); *see United States v. Babcock*, 924 F.3d 1180, 1196 n.7 (11th Cir. 2019) ("the Guidelines specifically exclude convictions under § 2G2.1 from the grouping rules. *See* U.S.S.G. § 3D1.2(d)"); *United States v. Schock*, 862 F.3d 563, 567 (6th Cir. 2017) ("Section 2G2 .1 offenses involving the sexual exploitation of minors are explicitly excluded from § 3D1.2(d)'s multiple-count grouping rule.").  Esposito's primer on grouping does not mention the express exclusion of § 2G2.1 from § 3D1.2.

That is not the only reason Esposito's grand grouping argument has little to offer to this appeal.  In cases where there are multiple counts of conviction and the guidelines advise life imprisonment, § 5G1.2(d) applies. That subsection states, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively,

but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences on all counts shall run concurrently, except as required by law."  U.S.S.G. § 5G1.2(d).

The Guidelines therefore allow a judge, when there are multiple counts of conviction, to impose consecutive sentences to the extent necessary to make the total punishment equal in severity to the calculated guidelines sentence, should the guidelines sentence exceed the statutory maxima. *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) (citing U.S.S.G. § 5G1.2(d)); *see also United States v. Dumes,* 313 F.3d 372, 384 (7th Cir. 2002); *United States v. Metzger*, 411 F. App'x 1 (7th Cir. 2010) (unpublished). Consistent with this framework, this Court has repeatedly upheld consecutive sentences on each of an offender's counts of conviction where the advisory guidelines range was life imprisonment, even when the resulting sentence well exceeded the life span of the offender. *See United States v. Thompson*, 523 F. 3d 806, 814 (7th Cir. 2008); *see also Metzger*, 411 F. App'x 1 (defendant sentenced to a total term 235 years, running each count of sexual exploitation of a child and one count of possession of child pornography consecutively); *United States v. Noel,* 581 F.3d 490 (7th Circ. 2009) (defendant sentenced to 25 years on each of 3 counts of sexual exploitation of a child and 5 years on one count of possession of child pornography, all run consecutively).

16

As much as he discusses grouping, Esposito does not disagree with his resulting Guidelines range: life.  (PSR ¶ 266.)  Most federal statutes do not authorize a life term, and the charges to which Esposito pled guilty are no exception—they specify maximum terms of thirty years and twenty years, respectively. *See* 18 U.S.C. §§ 2251(e) and 2252(b).  The Guidelines also do not specify a means of converting a life term into a determinate period of years or months.  Here, the PSR translated the term to an advisory guideline sentence of 620 years—the maximum sentence on each of the 21 counts of conviction, run consecutively. (PSR ¶ 266.)  Esposito did not dispute that his guideline range was life in prison, nor did he object to the court adopting this calculation from the PSR. (S. 3, 6.)

There are other good reasons Esposito's grouping argument misses the mark.  He did not commit substantially identical offenses over a period of time.  He is not a cocaine dealer who made 20 hand-to-hand deals to an undercover officer.

Esposito repeatedly subjected his adopted son to horrific sexual abuse for approximately seven years.  This abuse included bondage, urination, choking, whipping, and other forms of physical abuse, in addition to forced sexual acts.  Esposito also recorded the abuse, so he could both relive the moments himself and share the videos online with other pedophiles.

17

These incidents were not fungible or identical.  Each time Esposito abused Minor Victim 1, he inflicted unconscionable damage and trauma on him.  In that sense, this case matches examples in the Guidelines' commentary of cases that are not appropriate for the usual grouping rules. *E.g.*, § 3D1.2 app. note 3 ("(6) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts are not to be grouped together."); *id.* app. note 4 ("(5) The defendant is convicted of two counts of rape for raping the same person on different days.  The counts are not to be grouped together.").

The charging decision in this case reflected the heinous nature of Esposito's conduct, as well as the Guidelines' express treatment of such conduct.  So did the district court's reasonable sentencing determination. Although Esposito does not really argue that the court erred in its application of the Guidelines, his grouping argument requires clarification that the court's procedures in determining the applicable range were reasonable.

2.     The District Court's Method for Implementing a "Total Punishment" Was Reasonable, and Esposito's Claimed Procedural Error Is No Reason for Remand

Esposito combines his comments about the purposes of the grouping rules with isolated comments the court made to claim that the court did not impose a "total punishment" but improperly pronounced sentence count by

count.  His view of the law is inordinately rigid, and his view of the record is wrong.

As an initial matter, the way Esposito conceives of a court's pronouncement of a "total punishment" is unduly strained.  The law requires a court to fashion a sentence that will amount to the "total punishment."  A natural way to do that, when a defendant's "total punishment" is life but none of the individual offenses authorize a life sentence themselves, is to impose consecutive sentences as necessary. U.S.S.G. § 5G1.2(d).  That is what the court reasonably did here.

Esposito suggests the court did not "consider[] Mr. Esposito's case as a whole."  (A Br. 13).  That is just not correct.  After applying the § 3553(a) factors to the case as a whole, the court imposed a 200-year prison term as a total punishment for the body of his criminal conduct.  The court explained its intention to impose an aggregate term of life, and then imposed maximum consecutive terms on some counts, with shorter concurrent terms on others, to ensure Esposito would indeed live out his life in prison. (S. 46-49).

Related to this, Esposito says the court had to follow two "steps" in a strict order to comply with § 5G1.2.  (A. Br. 11, 15.)  As he sees it, the court may not "divide-and-conquer," but must expressly and formally clear step one—announcing a "total punishment"—and only then may move on to review individual counts at step two.  (A. Br. 12.)

Notably, Esposito does not cite to any authority establishing the formal two-step process at the heart of his procedural complaint.  (A. Br. 15-16.) And it is difficult to square such a requirement with the language of § 5G1.2 and its commentary.  *See, e.g.*, § 5G1.2 app. n. 1 ("The combined length of the sentences ('total punishment') is determined by the court after determining the adjusted combined offense level . . . .").  Consistent with logic, § 5G1.2 recognizes that a total punishment and the sum of the sentences for each count are intertwined and that the total overall punishment a court devises under § 3553(a) is necessarily the sum of its parts.  His argument reflects an overly rigid manner of reviewing a district court's sentencing decision.

In all events, the court essentially followed the steps Esposito says were necessary.  It is true that the court did not *announce* the sentence of 200 years until after detailing the sentences on each individual count. But the court had already explained that Esposito would be receiving a life sentence. (S. 46.)  *That* was his total punishment.  It was not "multiple punishments for substantially identical offense conduct." (A. Br. 11.)  Setting aside that such an argument is a rhetorical attempt to circumvent U.S.S.G. § 3D1.2's exclusion of § 2G2.1 from the grouping rules, it is just not a fair description of what happened.

### 3.     <u>The Precedents Esposito Cites Do Not Alter the Analysis</u>

Esposito's reliance on *United States v. De la Torre*, 327 F.3d 605 (7th Cir. 2003), is misplaced.  The defendant in *De la Torre* pled guilty to various drug and money laundering charges in connection with his participation in a marijuana distribution ring. 327 F.3d at 606.  At sentencing, the money laundering and the drug conspiracy charges were grouped together without objection, separate from the drug possession charge.  *Id.* at 607.  The Guidelines range for his "total punishment" was determined to be 151-188 months.  *Id.*  That range corresponded to the drug crimes, which carried a significantly higher base offense level than the money laundering charges. *Id.*  The district court sentenced the defendant to concurrent sentences of 151 months in prison on the drug and money laundering charges, and 60 months on the marijuana possession charge.

However, before the final judgment and order was entered on the docket, the defendant filed a motion for the court to reconsider his sentence, citing *Apprendi*.[2]  *Id.*  The defendant argued that the money laundering charge should control the Guidelines range, since the statutory maximum on the drug distribution charge was now lower than the maximum on the money laundering charge, thanks to *Apprendi*.  *Id.*  The district court agreed and

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

resentenced the defendant to concurrent sentences of 60 months on the drug

conspiracy counts and 71 months on the money laundering counts. *Id*. at

608. The government and the defendant appealed. *Id*.

This Court reversed, holding that the district court's "only error" was

re-sentencing the defendant based on the incorrect belief that *Apprendi*

mandated a shorter sentence on the defendant's money laundering counts

than on his drug conspiracy count. *Id*. at 611. *Apprendi* did affect the

statutory maximum of the drug count: because De la Torre only pled guilty to

distributing 35 pounds of marijuana, *Apprendi* limited his sentence on that

count to the statutory maximum for that quantity, which was 60 months.

But *Apprendi* did not change the fact that the drug charges set the offense

level for the "total punishment" under the grouping rules. *Id*. Therefore, the

original sentence of 151 months was proper. The case was remanded for

resentencing. *Id*. at 611-612.

Esposito insists that *De la Torre* involved "the same procedural error"

as the error allegedly made in this case. (A. Br. 13.) But the district court

made no error when determining Esposito's Guidelines range. *Apprendi* is

not implicated here.

And Esposito's charges did not group together in the same way as De

La Torre's. Just as it was proper for the district court in *De La Torre* to

sentence the defendant to 151 months in prison, so too was it proper for the

22

district court in Esposito's case to sentence him to an aggregate term of life imprisonment, and to a specific term of 200 years.

In his discussion of *De la Torre*, Esposito quotes *United States v. Griffith*, 85 F.3d 284 (7th Cir. 1996), another case which is wholly inapplicable. (A. Br. 15.) The defendant in *Griffith* pled guilty to one count of conspiracy to commit money laundering, one count of violating the Racketeering Influenced and Corrupt Organizations (RICO) Act, and one count of conspiracy to violate the RICO statute for his role in managing multiple "massage parlors" that were actually houses of prostitution. 85 F.3d at 286. Because all three charges involved substantially the same conduct, they were grouped together for sentencing purposes. *Id.* at 288-89. The sentencing court then used the offense guideline that produced the highest offense level to determine the appropriate "total punishment" for all of Griffith's criminal conduct, as the guidelines required. *Id.* at 289; U.S.S.G. § 3D1.3.

The highest offense level among Griffith's three counts of conviction corresponded to the money laundering count. *Id.* Griffith's "total punishment" was based on this offense level of 29. *Id.*

That leads to the crux of *Griffith*: *On the money laundering count alone,* Griffith was sentenced to the statutory maximum of five years, to run concurrent to his total punishment, which was imposed on the RICO charges.

23

*Id.* On appeal, he contended that it was unfair that his total sentence, which was calculated from the money laundering guideline, was longer than the statutory maximum for money laundering. *Id.*

This Court held that Griffith's argument, "while seemingly plausible," was "fallacious," because Griffith was not convicted solely of money laundering. *Id.* The sentence imposed upon him, while it corresponded to the base offense level for the money laundering count, was imposed as a *total punishment* for *all* of his criminal conduct. *Id.*

Both Griffith and Esposito faced longer total sentences than the statutory maxima on any individual count of conviction would allow. But that is where any comparison should end.

Esposito was facing a life sentence, and his criminal conduct did not group together. Esposito is a pedophile who raped and tortured his adopted son for years. Nothing in the law requires a sentencing court to entirely divorce a defendant's conduct, as reflected in individual counts of conviction, from the sentencing consideration. The opposite is true, especially in a case like Esposito's.

Esposito also cites to *Greenlaw v. United States*, 554 U.S. 237 (2008) and *Dean v. United States,* 137 S.Ct. 1170 (2017). (A. Br. 12). Both cases fail to move the needle in Esposito's favor. In *Greenlaw,* the only issue was whether a Court of Appeals can, entirely on its own initiative, increase a

24

defendant's prison sentence when the district court erroneously failed to impose the correct mandatory minimum sentence.  554 U.S. 237, 242.  The Supreme Court held that such a practice violated the cross-appeal rule.  *Id*.  Though the decision does state the general rule in sentencing package cases, it goes on to clarify, "This is not a 'sentencing package' case."  *Id*.

*Dean v. United States* is similarly unhelpful to Esposito's argument. 137 S.Ct. 1170 (2017).  The defendant in *Dean* was convicted of robbery charges, possession of a firearm as a convicted felon, and of possessing and aiding and abetting the possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).  137 S.Ct. at 1174.  Dean faced a 30-year mandatory minimum on the § 924(c) charges alone.  137 S.Ct. at 1174.

At sentencing, Dean argued that the court should consider his lengthy mandatory minimum sentences when calculating the sentences for the other counts and impose concurrent one-day sentences for those counts.  *Id*.  The judge stated that he would have agreed to Dean's request, given that Dean was not the ringleader and had no significant history of violence, but that he understood § 924(c) to preclude a sentence of 30 years plus one day.  *Id*.  In the judge's view, he had to consider the sentences on the other counts of conviction separately from the § 924(c) convictions, and the nature of those additional charges plainly warranted sentences longer than one day.  He

25

sentenced Dean to concurrent sentences of 40 months on each non-924(c) conviction, for a total of 400 months. *Id.* The Eighth Circuit affirmed the sentence on appeal. *Id.* at 1175.

The Supreme Court reversed, holding that courts are by no means required to disregard the effect of other sentences on other counts when determining a defendant's total term of imprisonment. *Id.* at 1176. The sentencing factors under § 3553(a) are relevant to both the total sentence and "at the front end, when determining a prison sentence for each individual offense in a multicount case." *Id.*

The sentencing court here acted exactly in line with this holding from *Dean.* The judge intended, at the front end, to impose a life sentence for the whole of Esposito's conduct. The judge considered the conduct reflected in each count when determining the individual sentences, but she certainly did not consider each charge in a vacuum. It was precisely because none of the counts themselves carried a life sentence that she went count by count in the first place.

In short, the lessons Esposito draws from the cases he cites are incorrect and irrelevant to his case.

**C.   Esposito's Below-Guidelines Sentence, and The Court's Procedures for Choosing It, Did Not Affect His Substantial Rights or Otherwise Amount to Plain Error**

To merit remand, the decision below must have affected Esposito's substantial rights as well as "the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736. Esposito cannot meet that standard.

This Court has held that, put simply, a life sentence is a life sentence. For example, in *United States v. Bour*, the defendant received a sentence of life plus 85 years on child pornography and child exploitation charges. 804 F.3d 880 (7th Cir. 2015). The district court at sentencing stated that the sentence was at the upper end of the applicable Guidelines range, when in fact it was an upward departure outside the Guidelines. *Id*. at 886. This Court held that, though this direct contradiction was procedural error, the error was harmless. *Id*. Whether the terms of imprisonment were concurrent or consecutive, Bour's life sentence was the same as life plus 85 years. *Id*. Further, the record left "no doubt" that the sentencing court "specifically intended that Bour would remain in federal prison for the remainder of his life." *Id*.; *see also United States v. Hill*, 30 F. App'x 602 (7th Cir. 2002) (holding that an *Apprendi* error was harmless because "there is no practical difference between a life sentence and a 130 year sentence"). Whether under "harmless error" or "substantial rights" analysis, the import

27

of such cases is clear: remand is not necessary to swap one effective life sentence for a different version of an effective life sentence.

The district court here made no contradictions at sentencing and thoroughly considered the 3553(a) factors. She intended to impose a life sentence, based on all of the circumstances of the case. She then fashioned a sentence that would guarantee Esposito would live out the rest of his life in federal prison. There is no indication in the record that, should Esposito's case be remanded for resentencing, that there would be any change in the outcome.

Still, Esposito maintains that his sentence did not represent the district court's view that 200 years was "sufficient, but not greater than necessary" to achieve the goals of sentencing, and instead represented the mere sum of terms that the court had imposed on individual counts. The record belies this argument.

The "parsimony principle of [18 U.S.C.] § 3553(a) requires that judges 'impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing." *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012). Here, the court's decision followed those dictates. The court calculated the guidelines correctly. *United States v. Abebe*, 651 F.3d 653, 657 (7th Cir. 2011). The judge gave Esposito ample opportunity to argue for a lower sentence. *Id.* And the judge clearly explained her consideration of all

28

the § 3553(a) factors, stating which factors influenced her final sentencing decision and citing the parsimony principle in express terms.  (S. 45-46.)

Regarding the nature and circumstances of the offense, the court characterized the defendant's conduct as "torture" and stated that the court could "think of nothing more horrible, no greater betrayal, no greater abuse, no greater psychological and physical damage that an individual could cause to his own child" than what the defendant did to his victim.  (S. 43).  The court discussed the defendant's history and characteristics and noted that the defendant did provide for his family financially and chose to plead guilty.  (S. 44-45).

The court further stated that she was "mindful of the Circuit's direction to us to be thoughtful about whether we want to impose mandatory life sentences when statutes don't cover them," but that a life sentence was a just punishment in light of the horrific nature of Esposito's conduct.  (S. 45).  The court noted that protection of a public was a statutory factor she was required to consider, and one which greatly influenced her sentencing decision. "[D]o I take the chance that this person can ever be around children again? [T]o me, the answer is no." (S. 46).

The court felt sentencing Esposito to life was necessary to "reflect the seriousness of the offense . . . and to promote respect for the law."  (S. 45-46).

That was reasonable, and giving him the relief he seeks on appeal is not going to change that result.

Finally, Esposito's argument that the "government must agree" that this purported "error is worth correcting" is misguided. (A. Br. 16.) He bases that contention, on which his hopes for a plain-error remand rely, on a contention that the government must care about precision in the total punishment, otherwise it never would have asked for 620 years (as opposed to some other number). That reasoning has many flaws: (1) the government often does not get the sentence it asks for and rarely deems such decisions worthy of reversal; (2) the government routinely relies on the guidelines to determine what sentence to recommend, which is where the 620-year figure came from; and (3) as Esposito admits, the "district court may very well impose a de facto life sentence again" on remand. That final point is one the district court made quite clear.

The district court intended that Esposito would receive a life sentence. The court then fashioned a sentence that would ensure Esposito would never be released from prison.

Esposito attempts to create a procedural error where none exists. This Court should affirm.

## CONCLUSION

For the reasons stated above, this Court should affirm.

                  Respectfully submitted,

                  JOHN E. CHILDRESS
                  Acting United States Attorney

By:   <u>s/ Kelsey L. Massa</u>
          Kelsey L. Massa
          Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE WITH CIRCUIT RULE 32

The foregoing BRIEF FOR THE UNITED STATES OF AMERICA complies with the type volume limitations required under Circuit Rule 32 of the United States Court of Appeals for the Seventh Circuit in that there are not more than 14,000 words and that there are 6,501 words typed in Microsoft Word word-processing this 5th day of March, 2021.


 s/ Kelsey L. Massa
Kelsey L. Massa
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on March 5, 2021, I electronically filed the foregoing

BRIEF FOR THE UNITED STATES OF AMERICA with the Clerk of the

Court for the United States Court of Appeals for the Seventh Circuit by using

the CM/ECF system.

I certify that all participants in this case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system to the following:

> Peter W. Henderson
> Assistant Federal Public Defender
> Office of the Federal Public Defender
> Peter_Henderson@fd.org
> Attorney for Defendant-Appellant

> s/ Kelsey L. Massa
> Kelsey L. Massa
> Assistant United States Attorney
> Office of the United States Attorney
> 10 West Market Street, Suite 2100
> Indianapolis, Indiana 46204-3048
> Telephone: (317) 226-6333
> Email: Kelsey.Massa@usdoj.gov